Botsford, J.
In July 1988, the Boston Police Department (the department) terminated the employment of police officer Leonard Nelson (Nelson); in February 1992, the Civil Service Commission (the commission) affirmed the department’s termination decision. Nelson appeals the commission’s decision pursuant to G.L.c. 31, §44. For the reasons stated below, the commission’s decision is AFFIRMED.
BACKGROUND
Prior Proceedings
On May 7, 1984, Nelson was arrested on charges, among others, of assault with a dangerous weapon. A grand jury indicted Nelson for these and related crimes. In June 1984, the department suspended Nelson pursuant to G.L.c. 268A, §25 pending the outcome of the criminal case against him. The criminal charges against Nelson were dismissed in February of 1987, after numerous trial dates, because of the nonappearance of prosecution witnesses — the three alleged assault victims. Nelson thereafter demanded that the department reinstate him; the department did not do so.
In October 1987, the department conducted a disciplinary hearing to determine whether Nelson had committed six specified departmental rule violations on May 7, 1984. The matter was continued generally because the department could not locate the missing witnesses. On June 28, 1988, Nelson filed an action *15 in this court seeking reinstatement and a declaration of his rights under G.L.c. 268A, §25, given that the criminal indictments had been dismissed. On July 11, 1988, the department finally terminated Nelson on the basis of the October 1987 departmental disciplinary hearing. Nelson sought preliminary injunctive relief reinstating him. In light of the department’s termination decision, a judge of this court (McHugh, J.) declined to reinstate Nelson, but did order the department to pay Nelson his salary pending a final determination of an appeal to the commission from the July 11 termination.
Nelson timely appealed the department’s termination decision to the commission pursuant to G.L.c. 31, §43. An administrative magistrate conducted a hearing on September 19,1988. He heard substantially the same evidence as that presented at the departmental disciplinary hearing because the department still could not locate the three assault victims. However, after the hearing before the magistrate closed, the department located two of the assault victims. It then petitioned the magistrate to reopen the hearing.
The magistrate reopened the hearing with respect to two of the six violations charged against Nelson— the two counts of assault with a dangerous weapon— and on June 19, 1989, heard testimony by two of the alleged assault victims. On the basis of evidence from both the September 1988 and June 1989 hearings, the magistrate concluded that the department had just cause to terminate Nelson and recommended that the department’s termination decision be affirmed. The magistrate’s recommended decision is dated February 10, 1992. In a decision dated February 27, 1992, the commission accepted the magistrate’s findings and recommendation and affirmed the department’s decision of termination.
The Magistrate’s Findings
The magistrate found as follows. On May 7, 1984, Nelson, while off duty, took the subway to Eggleston station to meet his friend. When his friend failed to meet him, Nelson began walking to his friend’s house in Jamaica Plain. He was also looking for a taxi. During his walk, Nelson saw a cab operated by William Smith parked on the street. When Nelson first observed Smith’s cab, Smith was sitting with his friend, Michelle Skinner, in the front seat. Smith had just dropped off a fare, James Henley, who had asked Smith to wait while he went to a particular address nearby.
Nelson approached Smith’s cab and told them that he was a police officer and that the man who had just left the cab was going in to get drugs. Smith and Skinner did not believe that Nelson was a police officer; Nelson showed them his badge.
When Henley returned to the cab minutes later, Nelson grabbed him and pulled him from the cab. Nelson began searching Henley and telling Henley that he wanted the drugs he knew Henley had. Henley and Nelson struggled outside the cab, but Henley was able to reenter the cab. When he did so, Smith drove off down the street until he reached a red light.
As the cab stopped at the red light, Nelson ran up with a gun in his hand. He pointed the gun at Smith’s head, and ordered Smith to stop the cab. Smith noticed foam around Nelson’s mouth. Nelson then pointed the gun at Henley, pulled him from the cab, and began searching him again. Finding nothing, Nelson released Henley and began walking away.
Smith drove off with Henley and Skinner as passengers, but after traveling a short distance, encountered two plain-clothes detectives of the department, one of whom, Detective Driscoll, Henley knew. Smith stopped the cab and related the incident involving Nelson to the detectives. Nelson was still within the detectives’ sight, and they directed Nelson to come to their location. Nelson complied.
The detectives informed Nelson that the cab’s occupants complained he had assaulted and robbed them. Nelson told them that he wanted to forget about the whole incident. After the detectives took Nelson’s gun away from him, Nelson informed the detectives that he was a police officer. On learning that Nelson was a police officer, Detective Driscoll notified his supervisor, Sergeant Gil Griffiths.
Sergeant Griffiths responded to the scene and began conversing with Nelson. Nelson became agitated during their conversation and used profane language; Griffiths, as well as the two detectives, were of the opinion that Nelson was under the influence of alcohol. The area night supervisor, Sergeant Leonard Marquardt, was called and arrived on the scene. The police officers arrested Nelson.
The next day, May 8, 1984, Deputy Superintendent Steven DeLosh ordered Nelson to answer questions about the incident, but Nelson refused to answer any questions without counsel present. DeLosh suspended Nelson for five days on account of his failure to submit to interrogation. On May 16, 1984, Nelson appeared at headquarters with an attorney and answered all the questions put to him.
DISCUSSION
Nelson contends that the magistrate employed unlawful procedures when he allowed the department’s motion to reopen the hearing, heard additional witnesses, and then based the decision in significant part on the testimony of those witnesses, neither of whom had testified at the department’s disciplinary hearing in October 1987, or at the commission’s hearing in September 1988. I disagree.
First, as a matter of procedure, Rule 4.3(m) of the commission’s Rules of Practice and Procedure permits a magistrate upon proper motion to reopen a hearing to hear evidence not previously introduced.[2] Thus, the magistrate had authority to allow the department’s *16 motion for a rehearing and consider new evidence in the form of testimony by Smith and Skinner.
More substantively — and more to the point of Nelson’s principal complaint — the magistrate and the commission were not required to restrict the evidence to that originally before the department in the October 1987 hearing. See Sullivan v. Municipal Court, Roxbury Dist., 322 Mass. 566, 572 (1948) (G.L.c. 31, §43 requires commission to conduct a hearing de novo based on all material evidence; “(t)here is no limitation of the evidence to that which was before the appointing [authority]”). The commission was entitled, and indeed obligated, to make independent factual findings on all the evidence presented in order to determine whether the department had just cause for its action. See Watertown v. Arria, 16 Mass.App.Ct. 331, 334 (1983). The magistrate and the commission here properly considered all evidence of the misconduct for which Nelson was terminated.
Nelson also asserts that the commission’s decision was based on evidence that did not relate to the reasons that were specified in the department’s original notice of charges. The commission (as well as the department) could not base the decision to terminate Nelson on reasons other than those set forth in the department’s notice of charges. See Murray v. Second Dist. Ct. of Eastern Middlesex, 389 Mass. 508, 516 (1983). See also Gloucester v. Civil Service Comm’n, 408 Mass. 292, 297 (1990). The administrative record makes clear, however, that the evidence considered by the magistrate, and then acted on by the commission, did relate directly to the department’s original charges against Nelson.
The department’s notice of charges alleges that Nelson violated four departmental regulations which respectively proscribe: conduct unbecoming a police officer; failing to obey a direct order; failing to submit to interrogatories; and failing to answer questions in interrogation. The notice then sets out six “specifications” which describe in detail (1) Nelson’s alleged failure to answer questions and submit to interrogation by Deputy Superintendent DeLosh (specifications I and II);[3] (2) Nelson’s alleged assault with a dangerous weapon (an automatic pistol) on Henley and Smith on May 7, 1984 (specifications III and IV); (3) Nelson’s alleged armed assault with intent to rob Henley on May 7, 1984 (specification V); and his alleged failure to register his firearm on May 7, 1984 (specification VI).
The evidence before the magistrate, including the testimony offered by Smith and Skinner in the reopened hearing, related directly to the specifications set out in the department's notice of charges and specifications III and IV in particular. (The magistrate had indicated in advance that he would confine his reopening to evidence on these two specifications.) Moreover, the magistrate’s recommended decision is based entirely on the same charges and the same rule violations that the department had specified. The commission’s final decision follows the same course, although the commission limited that decision to a consideration of the charges of assault with a deadly weapon and conduct unbecoming a police officer.[4] Nelson’s claim of procedural irregularities must be rejected.
Nelson’s additional arguments also deserve rejection. Issues related to his continued suspension following the dismissal of the criminal charges against him are not germane to this appeal; Nelson brought a separate action to challenge the department on this claim, and obtained a preliminary injunction to have his pay continued. In addition, Nelson’s contention that he was deprived of due process by the administrative procedures used in his case has no merit, as he received a full pre-termination hearing and a separate post-termination hearing.
Finally, Nelson’s allegation in his complaint, supported only by a passing reference in the conclusion section of his memorandum, to the effect that the commission’s decision was not based on substantial evidence is without any factual basis. The record amply supports all the magistrate’s factual findings, many of which reflect judgments about the credibility of the witnesses before him; I must give due respect to those judgments. See, e.g., Number Three Lounge, Inc. v. Alcoholic Beverages Control Comm’n, 7 Mass.App.Ct. 301, 309 (1979).
In sum, the record contains substantial evidence that Nelson’s conduct on May 7, 1984 constituted an extremely serious departure from the appropriate actions of a police officer. The commission properly concluded that the department had just cause for Nelson’s dismissal.
ORDER
For the foregoing reasons, the decision of the commission is AFFIRMED.

 See also G.L.c. 31, §43, which provides in relevant part: “[The] hearing [before a member of the commission or its designee]... shall be completed within thirty days after such filing unless . .. the hearing officer determines, in his discretion, that a continuance is necessary or advisable."

 These specifications refer to May 7, 1984, but it appears the actual date was May 8, 1984. There is nothing to indicate Nelson was misled or otherwise prejudiced by this error in date specification.

 The commission's decision to consider only these two charges, and not those related to Nélson’s alleged refusal to submit to interrogation or to answer questions, renders moot Nelson’s claim that he was improperly sanctioned twice for the interrogation-related conduct. (Nelson had been suspended for five days in May 1984, on account of this conduct.)